DAVID WILSON, *Plaintiff in Error*,

*vs.*

THE STATE OF WISCONSIN, *Defendant in Error.*

ERROR TO GRANT CIRCUIT COURT.

The intention of Section 14, of Chap. 141 of the Revised Statutes is, to constitute a rule of construction in all cases where the word "felony" is met with *in a statute.*

The statute ought not to be so construed as to multiply offences. Hence an offence not felony at common law, will not be construed a felony by statute, unless by express words, or by necessary implication.

The uttering of counterfeit coin is a misdemeanor only, at common law, and the statute does not make it a felony by making the offence punishable by imprisonment in the State prison; and it is not necessary to aver in the indictment, that the offence was committed "feloniously."

The safer construction to be applied in such cases is, that Sec. 14, of Chap. 141, does not necessarily make an offence, a felony, which before the statute was a mere *misdemeanor.*

The cases of Ward *ve.* The People, and Carpenter *vs.* Nixon, (N. Y.) and The State *vs.* Smith, (Maine,) commented upon.

The plaintiff in error was indicted at the last October Term of the Circuit Court of Grant county, for uttering counterfeit coin. The indictment contains two counts.

The first count charges the plaintiff in error with having on the 15th day of September, 1852, uttered and passed a counterfeit quarter-eagle to one Amos Chase, "*unlawfully, unjustly and deceitfully,*" with knowledge of the character of the coin, and with intent to defraud the said Chase, &c.

The second count is as follows: "that the said David Wilson, on the 15th day of September, 1852, at the county of Grant aforesaid, one certain other piece of false and counterfeit money, made of base metal,

and colored with a certain wash, producing the color

of gold, to the likeness and similitude of a piece of good, lawful and current gold money and coin of the United States, called a quarter-eagle, as and for a piece of good, lawful and current gold money and coin of the United States, called a quarter-eagle, unlawfully, unjustly and deceitfully, did utter and pay to one Amos Chase, he, the said Wilson, well knowing, &c."

A conviction was had on this indictment, and on the 13th of October, 1852, the prisoner was sentenced to two years imprisonment in the State prison.

After verdict, a motion was made in arrest of judgment, which was overruled, and sentence passed as above stated.

*J. Mills*, for the plaintiff in error, made and argued the following points :

1. Neither of the counts allege the uttering to have been done " feloniously." Our statute makes punishment in the State prison, a test of felony. The crime cannot be legally defined without the use of this word ; although the felony has been created by the statute. 6 *Dane's Abr.* 712 *d* 6 ; 4 *Blk. Com.* 228.

The present state of the authorities require this term to be used. 3 *Mass.* 254 ; 1 *Met.* 260 ; *Wharton's Cr. Law*, 100 ; *Curtis vs. The People*, 1 *Bruse*, 199 ; *Stout vs. Commonwealth*, 11 *S. & R.* 177.

When this term has been dispensed with, it has been by express statute. *Laws of Mass.* 1852, *p.* 21 ; *Miller vs. The People*, 2 *Scam.* 233–302.

The New York statute of jeofails, touching criminal proceedings, is broader than ours, yet that statute does not dispense with the use of this term in an indict-

ment. *Barb. Crim. Tr.* 279, 286. *People vs. Warner*, 5 *Wend.* 271; *N. Y. R. S.* 727, § 15.

Is the passing counterfeit money a felony by the Revised Statutes? The statute gives its own definition of the term "felony." *R. S. p.* 713. It is there applied to such offences as are punishable by imprisonment in the State prison. The statute clauses using the term "felony" to designate offences, must mean all such offences as have the characteristic definition; *R. S. p.* 23, § 2–6; *p.* 132; *p.* 63, § 2; *p.* 711, § 1; *p.* 712, § 5; *p.* 727, § 9, unless the statute defining a particular offence gives it some other name; as, *R. S.* 708, § 6. Embezzlement of funds is "felony." *R. S.* 778, § 29.

See New York decisions: *The People vs. Ward*, 3 *Hill*, 395, explained in *Carpenter vs. Nixon*, 5 *Hill*, 262; Revised Statutes of Maine construed and explained, 32 *Maine Rep.* 370.

2. The second count alleges merely a "coloring" to the likeness and similitude of a good quarter-eagle. A counterfeit copper cent, colored with this yellow wash, fills the description exactly. But such a similarity, consisting only in the color, could deceive nobody. *Whart. Cr. L.* 349.

The second count is in fact descriptive of a common law misdemeanor; and cannot be joined with a count for felony, without vitiating the indictment. 2 *Ch. Cr. L.* 116, 105; *Wharton's Pub. p.* 13; 7 *Dane's Abr.* 264 *a* 6.

*E. Estabrook*, attorney-general for the State, cited 1 *Russ. on Cr.* 78, 79, *et seq.;* *id.* 42, 43; *Archb.* 508; *id.* 53.

*J. A. Barber*, in reply, cited *R. S.* 692 ; *Whart.*
*Dig.* 13.

*By the Court*, Crawford, J. The plaintiff in error was indicted at the October term, A. D. 1852, of the Circuit Court of Grant County, under the latter clause of section fourteen of chapter one hundred and thirty-five, of the Revised Statutes, for uttering counterfeit coin. The indictment contained two counts, in each of which the defendant is charged with having uttered and paid out the counterfeit coin "unlawfully, unjustly and deceitfully," to one Amos Chase, he, the defendant, well knowing the said coin "to be false and counterfeit." The first count charges the uttering to be with intent to "injure and defraud" the said Amos Chase, and the second count omits the averment.

The defendant was found guilty, and before judgment, a motion in arrest was made and argued, which was overruled, and the defendant sentenced to imprisonment in State prison for the term of two years—punishment by solitary confinement and hard labor being directed in accordance with section five of chapter one hundred and fifty of the Revised Statutes.

The points made and argued here are, first: that the offence charged in the first count is, by the statute, a *felony*, and because it is not charged to have been done *feloniously*, the count is defective, and bad ; and second: that there is a misjoinder of counts ; because the second count sets forth and charges a *misdemeanor*, and ought not to be included in an indictment with a count for felony, such as the first count is.

There was another point made, but not seriously insisted on in argument, namely, that the second count charged merely a coloring to the similitude of good

gold coin, &c.   We think there is nothing in this objection, and that the second count is good.

It is insisted on behalf of the prisoner that section fourteen of chapter one hundred and forty-one of our statutes, makes the offence charged in the first count of this indictment a felony.   That section is as follows: " The term 'felony,' when used in any statute shall be construed to mean an offence for which the offender, on conviction, shall be liable by law, to be punished by death or by imprisonment in a State prison."

The plain meaning of this provision is, *to constitute a rule of construction,* in all cases where the word *felony* is met with in a statute.

In the English law, this word has a distinct, definite signification, namely, " an offence which occasions a forfeiture of either lands or goods, or both, at the common law, and to which capital or other punishment may be superadded, according to the degree of guilt."   (4 *Black. Com.* 95.)   But in this State, (as in other States of this Union,) this definition of felony would be wholly inapplicable, because with us, the Constitution (*Art.* I., *Sec.* 12) declares that " no conviction shall work corruption of blood, or *forfeiture of estate."*   So that while we recognize the crime of "felony" by our laws, we cannot give to it its original English definition.   Hence the necessity, in our laws, that some statutory meaning should be fixed to that class of crimes called by the statute, *felonies.*   This we believe to be the object of the legislature in the section referred to.   It is claimed, however, that because uttering counterfeit coin is made punishable by imprisonment in the State prison, it must therefore be a statutory felony, and in charging the offence in an in-

dictment, the word *feloniously* is indispensable. It is

true that every indictment for felony must charge the offence to have been done *feloniously*. (1 *State Cr. Pl.*, 82 ; *Archb.*, 47 ; *Bac. Abr. Indict. G.* 1 ; 1 *Ch. Cr. Law*, 242.) But are we warranted by the books in declaring this offence, which at common law is but a misdemeanor, to be a felony ?

Where a statute, by express words, or by necessary implication, declares that an offence shall be a felony, which before had been a misdemeanor, there is no question ; the will of the legislature must be carried out ; but it is against the policy and rule of the law to *multiply* or increase felonies, so that, whenever the statute can have force and effect without receiving a construction which would create a new felony, such construction will be avoided.

In the case of *The Commonwealth vs. McCombe*, (3 *Mass.* 254,) the defendant was indicted for *wilfully and maliciously* setting fire to and burning certain stacks of hay and straw. It was moved in arrest of judgment, that the acts complained of were by the statute a felony, and should have been so charged. The first section of this statute under which the indictment was framed, prohibited the burning of any dwelling house in the night, and declared that any aider or accessory in " *the felony or offence* aforesaid," should suffer death. The second section prohibited the burning of a dwelling house in day time, or of public buildings in the night, and provided for the punishment of accessories. The fourth section prohibited the offence for which the defendant was indicted, and provided for the punishment of the principal offender and " any person aiding or consenting ; " and the fifth section provided a punishment for any person as " *accessory*

JUNE TERM, 1853.

Wilson
vs.
State of
Wisconsin.

*after the fact*, who should, *after such felony or offence* committed by *any incendiary in manner as aforesaid*, knowingly conceal or assist the offender or any accessory before the fact, in any such felony or offence."

The known conclusion of law that no offence short of felony would admit of accessories before or after the fact, justified the conclusion in this case, (as was contended for the prisoner,) that when *accessories* were recognized and punished, the crime or " offence " must be taken to be a felony. Chief Justice Parsons, in delivering the opinion of the court, held that " in the construction of penal statutes, where there is any doubt in the case, it is the duty of the court so to construe them as not to multiply felonies, unless the construction be supported by express words, or by a reasonable implication." We think that in this case the implication was not only much more reasonable, but much stronger than in the case before us. The term *accessories* applied as well to the *offences* as to the *felonies* enumerated, and yet the court would not indulge in the implication that these *offences* were thereby created felonies.

In *The Commonwealth vs. Barlow*, (4 *Mass.* 439,) the same court held that " in the construction of a penal statute, *a misdemeanor could not be considered as made a felony, but by express words, or by necessary implication.* Generally, new felonies are created by express words, as by declaring that the offence shall be taken to be a felony, or that the offender shall be deemed a felon. And when a statute provides for the punishment of accessories after the fact, as distinct offenders, the perpetrators of the fact must be considered as felons, because to felonies only, are there accessories after the fact." The latter portion of this

quotation shows a case of what may be considered a
*necessary implication.*

The case of *Ward vs. The People*, (3 *Hill*, 395,) to which we have been referred by the counsel for the plaintiff in error, has received a careful examination from us.

Chief Justice Nelson, in that case, speaking of petit larceny, says : " The crime is felony at common law, and the only provision in the statute that can go to change the common law character of the offence, is that which declares that the term ' felony,' when used in any statute, shall be construed to mean an offence, for which the offender, on conviction, would be punishable by death or imprisonment in the State prison. This provision defines statute felonies, but does not interfere with those existing at common law, untouched by the statute, of which the offence of petit larceny is one." Now it strikes us, very forcibly, that if this implication arising from this provision of the New York statute (of which ours is an exact transcript) is, and must be, that all offences punishable by death or imprisonment in the State prison, are felonies, the negative presumption or implication is equally irresistible, that all offences not punishable in the manner designated, are not to be deemed felonies. Suppose we adopt a sylogistic process of reasoning on this subject, thus:

A felony is an offence punishable by imprisonment in the State prison.

But the crime of adultry is punishable by imprisonment in the State prison ;

Therefore, adultery is a felony.

This sylogism is correctly framed, if the first proposition be true in law, as stated and urged upon us ; and yet the conclusion is notoriously incorrect, for it

certainly will not be claimed that the crime of adultery is a felony. Moreover, if the construction claimed for this provision, by the counsel for the plaintiff in error, and given to it by the court, in *Ward vs. The People*, be correct, a person convicted of *petit larceny*, might vote at an election, and yet not be amenable under section 3, of chapter 13, of our statute, because the term *felony* is there used, and must be construed to mean an offence punishable in the State prison, and inasmuch as petit larceny is not so punishable, it is not included in the term ; but who doubts that the crime of larceny, either grand or petit, is a felony at common law, and is so recognized by our statutes? Sections 9, 11 and 12, of chapter 134, of our statutes, speak of " murder, rape, robbery, larceny or any other felony," giving evidence, by the language used, that larceny was classed by the legislature, among felonies. There is also another instance found in the statutes, where the legislature did not intend to make the offence a felony, merely by fixing the punishment of imprisonment in the State prison ; they expressly denominate it a misdemeanor. This is to be found in section 6, of chapter 139, which provides for the punishment of *seduction.*

In the State of New York, they have a statute' which provides that " no person sentenced upon a conviction of felony, shall be competent to testify, &c., unless he shall be pardoned, &c., but no sentence *upon a conviction for any offence, other than a felony,* shall disqualify, &c." In the case of *Ward vs. The People,* as we have seen, the Supreme Court of that State held *petit larceny* to be a *felony,* though not a " *statute felony,*" and to most minds it would seem that, being a felony, this offence of petit larceny was within

June Term,
1853.

Wilson
vs.
State of
Wisconsin.

the disabling provisions above cited ; yet in the case of *Carpenter vs. Nixon,* (5 *Hill* 260,) the same court decided, that a person convicted of petit larceny, was not thereby rendered incompetent to testify, because it was not a "statute felony," not being punishable by imprisonment in the State prison. The reasoning in support of these cases cited from New York is not satisfactory to us. A conviction for any felony ought, we think, to render a witness incompetent, regardless of the punishment provided for such felony, because it is the moral turpitude involved in the crime, and not the punishment inflicted, which ought to render the person infamous. 1 *Bull. N. P.,* 292 ; *Willes' R.,* 666. "When a man is convicted of an offence which is inconsistent with the common principles of honesty and humanity, the law concludes his oath to be of no weight, and excludes his testimony, as of too doubtful and suspicious a nature to affect the property or liberty of others."

"The crimes which render a person incompetent are, treason, *felony,* all offences founded in fraud," &c. (1 *Starkie,* 94–5.)

This is the common law, and we think the statute of New York did not alter, but merely declared it.

In the cases above cited from New York, the court does not seem to have given a fixed or conclusive construction to the section of their statute defining the term "felony."

We have been referred in argument to the statutes of Maine, which contain a provision substantially like our own ; defining the term "felony ;" and the case of The State vs. Smith (32 *Maine R.,* 370) is cited as showing the view which the Supreme Court of that State has taken of the subject.

13

JUNE TERM, 1853.

Wilson vs. State of Wisconsin. In the opinion given in that case, the point is very summarily disposed of. The conclusion is, that if the offence be *liable* to the punishment of imprisonment in the State prison, it is a felony. But the reasons for this conclusion are not given, and we are left without argument to support it. We cannot recognize this decision as authority ; because we believe it is against well-established principles of criminal law.

In England an offence prohibited by statute "under pain of forfeiting body, lands and goods," or of being "at the King's will for body, lands and goods," amounts only to a misdemeanor; and the reason given is, that an offence shall not be made a felony by the construction of any obscure or ambiguous words of a statute. (2 *Hawk. C. 7, Sec. 2 ; Dwarris on Stat.,* 769.) But the punishment provided by such a statute is *forfeiture,* the distinguishing element or characreristic of felony in England, as much as imprisonment in the State prison is with us.

We think the safer construction to be applied in this case is, that section fourteen of chapter one hundred and forty-one, does not necessarily make an offence a felony, which before the statute was a mere *misdemeanor,* but that it affords a definite meaning for a *technical* law term, which, without this statute, in some respects would be indefinite and vague.

We therefore hold that the first count in the indictment in this case sets forth and charges a *misdemeanor* only, and that it is sufficient.

This view of the case disposes of the objection for misjoinder.

The judgment of the Circuit Court is affirmed.